UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEM VIM YENOVKIAN<br>(aka VEM MILLER YENOVKIAN),<br><div align="right">Plaintiff,</div><br>v.<br>PHILIP DRURY MOOR and<br>THE CROWN OF ENGLAND,<br><div align="right">Defendants.</div> | Case No.: 21-CV-1071 JLS (MSB)<br><br>**ORDER (1) GRANTING PLAINTIFF'S APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS AND (2) DISMISSING PLAINTIFF'S COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>(ECF Nos. 1, 2) |

Presently before the Court are Plaintiff Vem Vim Yenovkian (aka Vem Miller Yenovkian)'s Complaint ("Compl.," ECF No. 1) and Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Mot.," ECF No. 2). Having carefully considered Plaintiff's Complaint, his IFP Motion, and the applicable law, the Court **GRANTS** Plaintiff's IFP Motion and **DISMISSES** Plaintiff's Complaint **WITHOUT LEAVE TO AMEND**.

<div align="center">

***IN FORMA PAUPERIS* MOTION**

</div>

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of / / /

<div align="center">1</div>

$402.[1]  *See* 28 U.S.C. § 1914(a).  An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  Although the statute does not specify the qualifications for proceeding IFP, the plaintiff's affidavit must allege poverty with some particularity.  *Escobeda v. Applebees*, 787 F.3d 1226, 1234 (2015).  Granting a plaintiff leave to proceed IFP may be proper, for example, when the affidavit demonstrates that paying court costs will result in a plaintiff's inability to afford the "necessities of life."  *Id.*  The affidavit, however, need not demonstrate that the plaintiff is destitute.  *Id.*

Here, Plaintiff's affidavit shows that he has no income.  *See* IFP Mot. at 1–2. Plaintiff reports holding a checking account with a balance of approximately $4,000.00. *See id.* at 2.  Plaintiff's monthly expenses of $7,080.00 exceed his monthly income and his checking account balance.  *See id.* at 4–5.  The Court therefore concludes that Plaintiff adequately has demonstrated that paying the $402 filing fee would result in his inability to afford the necessities of life.  Accordingly, the Court **GRANTS** Plaintiff's IFP Motion.

## SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

## I.    Standard of Review

Because Plaintiff is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2).  *See, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002) (per curiam) (holding 28 U.S.C. § 1915(e)(2) screening applies to non-prisoners proceeding IFP); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)).  Under this statute, the Court must *sua sponte* dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).  The additional $52 administrative fee does not apply to persons granted leave to proceed *in forma pauperis*.  *Id.*

damages from defendants who are immune. *See Lopez*, 203 F.3d at 1126–27. "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"When a court does not have jurisdiction to hear an action, the claim is considered frivolous." *Johnson v. E. Band Cherokee Nation*, 718 F. Supp. 6, 6 (N.D.N.Y. 1989). Moreover, "[t]he Court has an independent obligation to determine whether it has subject-matter jurisdiction." *Cox v. Lee*, No. CV-20-0275-PHX-DMF, 2020 WL 1904625, at *2 (D. Ariz. Apr. 17, 2020) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.") (citation omitted). Pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court ***must*** dismiss the action" (emphasis added). As the plain language of Rule 12(h)(3) suggests, this requirement is mandatory. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (noting that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived'"; therefore, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety") (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard.  *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Further, "[w]hile factual allegations are accepted as true, legal conclusions are not." *Hoagland v. Astrue*, No. 1:12-cv-00973-SMS, 2012 WL 2521753, at *3 (E.D. Cal. June 28, 2012) (citing *Iqbal*, 556 U.S. at 678).  Courts cannot accept legal conclusions set forth in a complaint if the plaintiff has not supported his contentions with facts.  *Id.* (citing *Iqbal*, 556 U.S. at 679).

Courts have a duty to construe a *pro se* litigant's pleadings liberally.  *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect," unless the court determines that "the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)).

## II.   Plaintiff's Factual Allegations

Plaintiff alleges that, on October 15, 2016, his children's mother, Sonia Helen Gulian, kidnapped his children, Child S and Child V, who were born and raised in Los Angeles, California, while he was working on a two-year contract in Toronto, Canada. Compl. at 2.  The children were taken from Toronto to the United Kingdom.  *Id.*  Plaintiff immediately filed a Hague Application and ultimately succeeded in having his children returned to Canada after twenty-two months of litigation in the courts of the United Kingdom.  *Id.* at 2–3.  "[I]n contempt of the Hague Application return order," a Canadian judge, Jasmine Akabarali, returned the children back to the United Kingdom within three months of their return to Canada.  *Id.* at 3.

/ / /

Plaintiff claims he had "no representation, nor presence within the courtroom," in the Canadian court process concerning custody of his children that took place in June 2019, despite his requests to continue the proceedings to give him time to recover financially from the Hague process. *Id.* In light of his finances and the Covid-19 pandemic, Plaintiff was unable to take further action until September 2020, when he applied through the United Kingdom courts for contact with his children. *Id.* On January 13, 2021, Defendant Philip Drury Moor, a judge ("Judge Moor"), issued an order concerning Plaintiff's contact with his children. *Id.* Plaintiff alleges "[his] ex-wife immediately breached this order," and, at any rate, that the order was "illegal," as one condition of Plaintiff's contact with his children was that he not make or publish any videos about them. *Id.* Plaintiff claims that the only videos he has published about his children have been "unlisted" and "aimed at a select small audience of Lawyers, children's health and welfare experts, and US Government officials" to show the abuse his children allegedly have suffered due to their kidnapping by their mother. *Id.* at 3–4.

On May 1, 2021, Plaintiff traveled to England to have contact with his children. *Id.* at 4. On May 4, 2021, Judge Moor revoked the contact order because he discovered that Plaintiff had published an unlisted video about "the International kidnapping and abuse of [Plaintiff's] children." *Id.* Plaintiff argued that he was within his legal rights to make and use such a video, and that, as a "commercial film processor," he is a "mandated reporter." *Id.* Judge Moor dismissed Plaintiff's arguments and set a trial for July 23, 2021, "pertaining to [Plaintiff's] contact with [his] children." *Id.*

Plaintiff states that "[he] ha[s] spent 10s of 1000s of dollars to be in the UK," *id.*, and that he and his mother "are in the UK indefinitely as a result of Judge Philip Moor's actions," *id.* at 5. Plaintiff brings this action against Judge Moor, whom Plaintiff claims "acted not as a judge, but as a 'minister,'" as well as "Judge Moor's employer, the Crown of England, for allowing such a travesty to happen within their courts." *Id.* at 5. Among other relief, Plaintiff seeks injunctions restoring his parental rights, mandating the removal of "defamatory false information and false accusations that have been placed online due to

the judges in Canada," and removing Judge Moor from his position; as well as compensatory and emotional distress damages from Judge Moor totaling more than $1.2 million. *Id.* at 60–62.

## III. Analysis

### A. Lack of Subject-Matter Jurisdiction

"Federal district courts are courts of limited jurisdiction that 'may not grant relief absent a constitutional or valid statutory grant of jurisdiction' and are 'presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.'" *Cooper v. Tokyo Elec. Power Co.*, 990 F. Supp. 2d 1035, 1038 (S.D. Cal. 2013) (quoting *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003)). A plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)). "This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over an action." *Wilkerson v. Butler*, 229 F.R.D. 166, 169 (E.D. Cal. 2005) (citing *McNutt,* 298 U.S. at 189; Fed. R. Civ. P. 8(a)(1) (requiring "a short and plain statement of the grounds for the court's jurisdiction")).

#### 1. The Crown of England

Plaintiff purports to bring claims against "the Crown of England," which this Court construes to mean the United Kingdom. *See* Compl. at 5 (noting that Plaintiff is suing the Crown as "Judge Moor's employer, . . . for allowing such a travesty to happen within their courts"); *id.* at 61 ("I'd like the Crown of England, who is unlawfully holding my children, to return the children to me immediately . . . ."); *id.* (claiming that "the Crown has acted completely illegally in claiming jurisdiction over my children") (emphasis in original).

The Foreign Sovereign Immunities Act of 1976 ("FSIA") "provides the exclusive source of subject matter jurisdiction over suits involving foreign states and their instrumentalities" and "codifies, as a matter of federal law, the restrictive theory of sovereign immunity." *Moore v. United Kingdom*, 384 F.3d 1079, 1082 (9th Cir. 2004)

(citations and internal quotation marks omitted).  "Subject-matter jurisdiction for claims brought against foreign states under the FSIA is conferred by 28 U.S.C. § 1330(a)."  *Id.* (footnote omitted).  Section 1330(a) provides:

> The district courts shall have original jurisdiction . . . of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a).  "Thus, federal courts have been held to have jurisdiction over foreign states as defendants under the FSIA only when that state is not entitled to immunity—that is, when one of the statutory exceptions applies."  *Moore*, 384 F.3d at 1083 (citations omitted).

It is clear that the United Kingdom is a "foreign state" under 28 U.S.C. § 1603(a), and it does not appear from the allegations in the Complaint that any of the statutory exceptions to immunity enumerated at 28 U.S.C. §§ 1605–07 apply to Plaintiff's claims. Accordingly, the Court finds that Defendant The Crown of England has sovereign immunity, and accordingly this Court lacks subject-matter jurisdiction over Plaintiff's claims against it.

### 2.   *Judge Moor*

Plaintiff also asserts claims against Judge Moor of the United Kingdom.  *See generally* Compl.  Plaintiff claims that Judge Moor "acted not as a judge, but as a 'minister,' with no judicial immunity," Compl. at 5, and "acted in a wholly unlawful manner," *id.* at 4.  Accordingly, Plaintiff claims that "Judge Philip Moor pierced his own judicial immunity."  *Id.* at 5.

"Although a foreign official is not protected by the [FSIA] . . . , 'foreign government officials acting [in] their official capacity . . . are [nonetheless] entitled to immunity[.]'" *Kapach v. Intel Corp.*, No. CV206277FMOMAAX, 2020 WL 7889064, at *2 (C.D. Cal. Dec. 14, 2020) (citing *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010); *Eliahu v. Jewish*

*Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019); *Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009); *Marazhapov v. Republic of Kazakhstan*, 2019 WL 3035472, at *2 (E.D.N.Y. 2019)).   The Ninth Circuit has held that "[c]ommon-law foreign sovereign immunity extends to individual foreign officials for 'acts performed in [their] official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state[.]'" *Dogan v. Barak*, 932 F.3d 888, 893–94 (9th Cir. 2019) (quoting Restatement (Second) of Foreign Relations Law § 66(f) (1965)).   As relevant here, "'[c]onduct-based immunity is afforded to "any [ ] [p]ublic minister, official, or agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state."'" *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 664 (N.D. Cal. 2020) (citing *Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019); Dogan, 932 F.3d at 894).   A district court lacks subject-matter jurisdiction over such claims, which are therefore properly dismissed.  *See Kapach*, 2020 WL 7889064, at *2 (citing *Eliahu*, 919 F.3d at 712).

Whether Judge Moor was acting as a "judge" or a "minister," Plaintiff does not appear to allege that he was not acting in his official capacity as an officer of the United Kingdom.  *See* Compl. at 5; *see also generally id.*   To the contrary, Plaintiff challenges Judge Moor's rulings issued in his capacity as a United Kingdom judge.  *See id.* at 60 ("Judge Moor decided to keep this gross violation of my rights going within the UK Courts.").   Accordingly, the Court finds that it lacks subject-matter jurisdiction over the claims against Judge Moor on the basis of conduct-based foreign official immunity, as the effect of exercising jurisdiction over him would be to enforce a rule of law against the United Kingdom, as Plaintiff seeks to have Judge Moor removed from his position as a judge and to have rights restored to him in contravention of Judge Moor's judicial orders. *See Dogan*, 932 F.3d at 894; *see* Compl. at 60–61.

Accordingly, the Court finds that both named Defendants in this action are immune from suit and that this Court therefore lacks subject-matter jurisdiction over Plaintiff's action.

### B.      The Act of State Doctrine

Plaintiff's Complaint further merits dismissal pursuant to the act of state doctrine. "As a doctrinal matter, the 'classic statement' of the act of state doctrine is that '[e]very sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory.'" *Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064, 1069 (9th Cir. 2018) (quoting *Credit Suisse v. U.S. Dist. Court*, 130 F.3d 1342, 1346 (9th Cir. 1997)). "In its modern formulation, the doctrine bars suit where '(1) there is an official act of a foreign sovereign performed within its own territory; and (2) the relief sought or the defense interposed [in the action would require] a court in the United States to declare invalid the [foreign sovereign's] official act.'" *Id.* (quoting *Credit Suisse*, 130 F.3d at 1346).

"Here, [P]laintiff seeks to challenge '(a) a[ United Kingdom] government order, (b) issued pursuant to [United Kingdom] domestic law, (c) by [the United Kingdom]'s courts, [and] (d) . . . within [the United Kingdom]'s territory.'" *Kapach*, 2020 WL 7889064, at *4 (citation omitted). Thus, "[r]esolution of [P]laintiff's claims would require the court to sit in judgment of the official acts conducted in [the United Kingdom] by [United Kingdom] public officials." *Id.* (citation omitted). Plaintiff essentially asks the Court to declare Judge Moor's rulings unlawful and to order his children returned to Plaintiff's custody, and he therefore seeks to have this Court "declare invalid the [United Kingdom's] official act"— *i.e.*, Judge Moor's appointment and his judicial orders pertaining to Plaintiff. *Sea Breeze Salt*, 130 F.3d at 1346 (internal quotation marks and citation omitted).

"The Supreme Court has indicated that even when the two mandatory elements are satisfied, courts may appropriately look to additional factors to determine whether application of the act of state doctrine is justified." *Id.* at 1072–73 (citing *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 409 (1990)). Those factors,

> referred to as the "Sabbatino" factors, include: (1) the degree of codification and consensus concerning a particular area of

international law and activity; (2) the impact on foreign relations between the United States and the other sovereign state; (3) whether the government allegedly responsible for the disputed activity is still in existence; and (4) whether the official act of state was in the public interest.

*Kapach*, 2020 WL 7889064, at *4 (footnote omitted) (citing *Royal Wulff Ventures LLC v. Primero Mining Corp.*, 938 F.3d 1085, 1096–98 (9th Cir. 2019); *Sea Breeze Salt*, 899 F.3d at 1073–74). Given that the Court has found that application of the act of state doctrine is justified here, the Court need not apply the *Sabbatino* factors. *See Royal Wulff*, 938 F.3d at 1096 ("Because this is a case in which the policies underlying the act of state doctrine justify its application, the district court did not err in declining to specifically address each *Sabbatino* factor."). Accordingly, the Court declines to apply the *Sabbatino* factors and finds that Plaintiff's Complaint further merits dismissal due to the act of state doctrine.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's IFP Motion (ECF No. 2) and **DISMISSES** Plaintiff's Complaint (ECF No. 1) in its entirety as frivolous pursuant to 28 U.S.C. § 1915(e)(2), because both named Defendants in this action are immune from suit and because this action is barred by the act of state doctrine. Because leave to amend would be futile, dismissal is **WITHOUT LEAVE TO AMEND**. *See Kapach*, 2020 WL 7889064, at *4 (dismissing case barred by both immunity and act of state doctrine without leave to amend, as amendment would be futile). Further, the Court **CERTIFIES** that an IFP appeal from this Order would be frivolous and therefore would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See Miller v. Penish*, No. 3:16-CV-3078-AJB-MDD, 2017 WL 1094083, at *5 (S.D. Cal. Mar. 23, 2017) (citations omitted). Because this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: August 18, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge